<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SONIA REYES, et al., | : | CIVIL ACTION NO. 05-1882 (MLC) |
|  | : |  |
|     Plaintiffs, | : | **MEMORANDUM OPINION** |
|  | : |  |
|     v. | : |  |
|  | : |  |
| CITY OF TRENTON, et al., | : |  |
|  | : |  |
|     Defendants. | : |  |
| ———————————————— | : |  |

**COOPER, District Judge**

Plaintiffs, Sonia Reyes ("Reyes") and Ingolberth Sportella ("Sportella", and together with Reyes, "Plaintiffs"), commenced this action in state court against the City of Trenton, officer Aaron Kelsey ("Kelsey"), officer Timothy Long ("Long"), and police chief Joseph Santiago ("Santiago", and together with the City of Trenton, Kelsey, and Long, "Defendants"), alleging (1) unreasonable and excessive force, deliberate indifference to serious medical needs, and false arrest in violation of 42 U.S.C. §§ ("Sections") 1983, 1985, and 1986, (2) malicious prosecution, negligence, and negligent infliction of emotional distress under applicable state law, (3) that "[e]quitable relief is necessary to prevent the continuing violations of the constitutional rights of Plaintiffs and other citizens of [New Jersey] by Defendants", and (4) that Defendants violated Plaintiffs' equal protection rights under the Fourteenth Amendment, Section 1981, and the New Jersey Constitution. (Dkt. entry no 1, Compl.)  The Defendants

removed the action here.   (Id., Not. of Rmv.)   On April 11, 2006,
Plaintiffs and Santiago entered into a Stipulation of Dismissal
pursuant to which Plaintiffs voluntarily dismissed all claims
against Santiago with prejudice.   (Dkt. entry no. 11, 4-11-06
Stip. of Dismissal.)

The City of Trenton now moves for summary judgment in its
favor, in effect, pursuant to Federal Rule of Civil Procedure
("Rule") 56(c).   (Dkt. entry no. 19.)   Further, Kelsey and Long
also move for summary judgment in their favor, in effect,
pursuant to Rule 56(c).   (Dkt. entry no. 20.)   The Court, for the
reasons stated herein, will (1) grant the separate motions
insofar as they concern federal law, (2) deny without prejudice
the separate motions insofar as they concern state law, (3) enter
judgment in favor of Kelsey, Long, and the City of Trenton with
respect to Plaintiffs' federal claims, and (4) remand Plaintiffs'
state law claims.

## BACKGROUND

The Trenton Police Department received a disturbance
complaint on November 15, 2002 regarding Plaintiffs' residence.
(Compl., at ¶ 9; Kelsey & Long Br., at 2.)[1]   Kelsey and Long
responded to the complaint.   (Compl., at ¶ 10; Kelsey & Long Br.,

---

[1]   The citations in this background section refer to the
parties' briefs, which, in turn, cite to the pleadings,
depositions, affidavits, and other items contained in the record.
See Fed.R.Civ.P. 56(c).   The Court has reviewed the entire record
in rendering this opinion.

at 2.)  When they arrived, they found Sportella sitting on the front porch conversing with three men who were standing on the sidewalk in front of the residence.  (Kelsey & Long Br., at 2; Pl. Br., at 3.)  Kelsey noticed a six-pack of beer on Plaintiffs' porch, which contained five empty bottles.  (Kelsey & Long Br., at 3.)  Kelsey instructed Sportella to put the beer bottles in the recycling bin and directed the other three men to leave.  (Id.)  Accordingly, Sportella went to the side of the house to deposit the bottles into the recycle bin, and found Reyes, his mother, exiting her car.  (Id.)

Reyes saw that several people were in front of her home.  (Id.)  She recognized one of the black men as someone who had "previously caused a lot of problems for one of her sons".  (Id.)  Reyes approached this man and stated, "[g]et out of here you f*****g n****r."  (Id. at 4; Pl. Br., at 4.)  Kelsey believed this derogatory statement was directed at him.  (Kelsey & Long Br., at 5; Pl. Br., at 4.)  Kelsey told Reyes to "shut up", but she continued making racial invectives about the black males in front of her home.  (Trenton Br., at 5; Pl. Br., at 4.)  Thus, Kelsey asserts that he asked Reyes to calm down because she was causing a disturbance, and directed the three men to move further down the street.  (Kelsey & Long Br., at 5.)  The men complied, but, according to Kelsey and Long, Reyes continued to scream "n*****s" at them as they progressed down the street.  (Trenton Br., at 5.)

3

The disturbance caused many of Reyes's neighbors to look out their windows. (Kelsey & Long Br., at 5.) Kelsey claims that Reyes refused to calm down and he believed the situation had become volatile. (Id.; Pl. Br., at 4.) Thus, Kelsey arrested Reyes for improper behavior and handcuffed her behind her back. (Kelsey & Long Br., at 6; Trenton Br., at 5.) Plaintiffs allege that this "assault by Defendants Kelsey and Long caused numerous injuries to Ms. Reyes, including neck injuries, left shoulder injuries and numbness of the left upper extremities", as well as "serious mental anguish, psychological and emotional distress, humiliation, physical pain and suffering". (Compl., at ¶¶ 13, 19.) Sportella told Kelsey, "Yo, you know she has a reconstructive hand," but was told to "shut up." (Kelsey & Long Br., at 6.) Sportella also told a neighbor who was inquiring about the disturbance, "[t]his black motherf****r, you know, is locking my mom up for nothing." (Id.; Pl. Br., at 5.) Long then pushed Sportella against a wall and handcuffed him as well. (Kelsey & Long Br., at 6.) Sportella claims that his head banged against the wall and one of his back left molars cracked. (Id., at 7, 9; Pl. Br., at 6.) According to the City of Trenton, Sportella was arrested for attempting to physically interfere with Reyes's arrest. (Trenton Br., at 5.)

Sportella and Reyes were taken to the police station. (Kelsey & Long Br., at 7.) According to Sportella, Reyes

4

"flipped out" and started yelling on the way to the station. (Primas Cert., Ex. B, 10-5-06 Sportella Dep., at 56.)  When they arrived, Reyes suffered a panic attack, and Kelsey significantly tightened her handcuffs because they appeared to be too loose. (Id. at 7-8; Pl. Br., at 6.)  Sportella continuously stated that Reyes had heart problems and eventually screamed that she was ill.  (See Pl. Br., at 6-7.)  As a result, Kelsey removed Reyes's handcuffs and put her against a wall.  (Kelsey & Long Br., at 8.)  Moreover, Kelsey placed a nitroglycerin tablet, which someone had retrieved from Reyes's bag, under her tongue.  (Id.; Trenton Br., at 6; Pl. Br., at 7.)

Plaintiffs were eventually released to Reyes's husband. (Pl. Br., at 7.)  Reyes was charged with improper behavior and Sportella was charged with both improper behavior and drinking in public.  (Id. at 12, 15-16; see Kelsey & Long Br., at 10.) However, the charges were later dismissed for lack of prosecution.  (Pl. Br., at 8.)

## DISCUSSION

### I.  Summary Judgment Standard

An award of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P.

56(c).  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  <u>Id.</u> at 252.  "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."

Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).

## II.  Summary Judgment Standard Applied Here

### A.  Plaintiffs' Section 1983 Claims

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  For a Section 1983 claim to survive a motion for summary judgment, there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right.  Groman, 47 F.3d at 633.

"The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  Further, officials may be liable under Section 1983 for the acts of those over whom they have

supervisory responsibility.  However, civil rights liability cannot be predicated solely on the doctrine of <u>respondeat superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement in the alleged wrong-doing must be shown.  <u>Id.</u>  There is no dispute here that the City of Trenton and its two police officers acted under the color of state law. (<u>See</u> Kelsey & Long Br., at 13.)

Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated.  <u>See</u> <u>Groman</u>, 47 F.3d at 633.  As discussed in more detail below, this Court finds that Plaintiffs have not sufficiently demonstrated that the City of Trenton, Long, and Kelsey violated any of their constitutional rights. Thus, they cannot be held liable under Section 1983.  <u>See</u> <u>Martino v. County of Camden</u>, No. 04-5300, 2005 U.S. Dist. LEXIS 15622, at *41 (D.N.J. July 26, 2005) (explaining that because no established constitutional right was violated, defendants could not be held liable under Section 1983).

### 1.  **Excessive Force**

Plaintiffs allege that Kelsey and Long used "unreasonable and excessive force" against them in violation of their rights under the Fourth and Fourteenth Amendments of the United States Constitution.  (Compl., at ¶¶ 25-27.)  Specifically, Plaintiffs argue that Kelsey, with the assistance of other officers,

unnecessarily restrained Reyes even though "there was no threat to the physical safety of an officer, no attempt to flee, no attempt to resist arrest and lack of probable cause". (Pl. Br., at 24.)  Further, Plaintiffs argue that (1) Kelsey did not make allowances for Reyes's medical conditions even after Sportella and her neighbors informed him about such conditions, (2) Kelsey threw Reyes into the back of his police vehicle, (3) Kelsey tightened Reyes's handcuffs so that marks were left on her arms, and (4) Long slammed Sportella against a wall with such force that he cracked a tooth.  (Id. at 24-25.)[2]

Claims of excessive force by a police officer are evaluated under the Fourth Amendment's "objective reasonableness" standard. Brosseau v. Haugen, 543 U.S. 194, 197 (2004).  Thus, a plaintiff alleging excessive force must demonstrate that the defendant officer's seizure of the plaintiff was unreasonable.  Bornstad v. Honey Brook Twp., No. 05-4534, 2007 U.S. App. LEXIS 218, at *13 (3d Cir. Jan. 5, 2007).  "[R]easonableness is evaluated under a totality of the circumstances analysis, which asks whether 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them without regard to their underlying intent or motivations.'" Id. at *14.  In evaluating

---

[2]  Plaintiffs have not offered (1) any medical evidence establishing the claimed injuries, or (2) any evidence establishing a causal connection between the claimed injuries and the incident.

the reasonableness of an officer's actions, the Court should consider, <u>inter</u> <u>alia</u>, (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of others, (3) whether the suspect attempted to evade arrest, (4) whether the suspect was a violent or dangerous person, (5) the duration of the police conduct at issue, (6) whether the police conduct at issue occurred during an arrest, (7) whether there was a possibility that the suspect was armed, and (8) the number of persons with whom the officers had to contend at one time.  <u>Id.</u>

The Court concludes that Kelsey and Long have demonstrated that the force they used to arrest Plaintiffs was objectively reasonable.  Kelsey and Long were responding to a disturbance report when they arrived at Plaintiffs' residence. (Pl. Br., at 2; Kelsey & Long Br., at 2.)  The officers observed a group of men "being noisy" and noticed a six-pack of beer with only one full bottle remaining. (Kelsey & Long Br., at 2-3; <u>see</u> Pl. Br., at 3.)  Thereafter, Reyes arrived and according to Sportella, was "upset" and "flipping out". (Primas Cert., Ex. B., 10-5-06 Sportella Dep., at 46.)  Further, Reyes was yelling derogatory terms at one of the black men in front of her home, and refused to calm down. (<u>Id.</u> at 4-5; <u>see</u> Pl. Br., at 4.)  Kelsey believed the situation was becoming volatile, and thus, arrested Reyes and placed her in handcuffs. (Kelsey & Long Br., at 16; Pl. Br., at 4.)  When Sportella realized Reyes was being arrested, he began

10

to question and criticize the officers, and this caused Long to believe it was necessary to arrest Sportella as well. (Kelsey & Long Br., at 16; see Pl. Br., at 4 (noting that Sportella "protested" Reyes's arrest).)  Thus, the Court finds Kelsey and Long have established that their conduct was objectively reasonable in using some force under these circumstances.  See Bornstad, 2007 U.S. App. LEXIS 218, at *13.  Therefore, Kelsey and Long have demonstrated prima facie entitlement to summary judgment on Plaintiffs' excessive force claim.

The considerations set forth in Bornstad also suggest that Kelsey and Long acted reasonably in terms of the amount of force used in the circumstances.  The crimes at issue were not severe, and neither Reyes nor Sportella attempted to evade arrest.  See id. at *14.  However, Kelsey's use of force occurred while he was attempting to arrest Reyes.  The officers believed such arrest was necessary because Reyes was screaming and making derogatory statements, and thus, created a risk that either she or the party to whom she was directing her statements would become violent and injure either Reyes, the officers, Sportella, or a bystander. See id.  Similarly, Long's use of force occurred while he was arresting Sportella for protesting and interfering with Reyes's arrest.  See id.  Reyes's conduct and temperament at the time of the incident also may have led the officers to believe she was a violent or dangerous person, who possibly carried a weapon.  See

id.  Moreover, the officers had to address a number of persons, including Sportella, the three males who were talking to Sportella outside his home, and Reyes in order to gain control over the situation and alleviate the disturbance.  See id. Therefore, this Court finds that Kelsey and Long have demonstrated that their decision to use sufficient force to arrest Reyes and Sportella and place them in handcuffs was objectively reasonable in light of the facts and circumstances they confronted.  Further, Plaintiffs have not offered any evidence rebutting Kelsey and Long's prima facie showing that they are entitled to summary judgment on Plaintiffs' excessive force claim.

### 2.   False Arrest and Malicious Prosecution

Plaintiffs allege, in counts three and four of the complaint, that "[t]he conduct of Defendants Kelsey and Long acting individually and together with other Defendants resulted in [Reyes and Sportella] being falsely, maliciously and unlawfully arrested and detained."  (Compl., at ¶¶ 44, 54). Further, in count five Plaintiffs allege that Kelsey and Long charged Reyes with improper behavior and drinking in public (1) without probable cause to believe that she committed these offenses, and (2) "with malice and/or with the primary purpose being other than that of bring [sic] an offender to justice." (Id. at ¶¶ 63-65.)  Plaintiffs contend that Kelsey, Long, and the

12

City of Trenton are not entitled to summary judgment on their false arrest and malicious prosecution claims because genuine issues of material fact exist as to whether Kelsey and Long had probable cause to arrest them for disorderly conduct and drinking in public.  (Pl. Br., at 11-16.)  We disagree, however, and find that viewing the evidence in the light most favorable to Plaintiffs, Kelsey, Long, and the City of Trenton have made a prima facie showing that they are entitled to summary judgment on those claims, and Plaintiffs have failed to rebut this showing.

The Fourth Amendment prohibits officers from, <u>inter alia</u>, (1) making arrests without probable cause, and (2) depriving an individual of liberty through a legal proceeding.  <u>See</u> <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 269 (3d Cir. 2000); <u>Holmes v. McGuigan</u>, 184 Fed.Appx. 149, 151 (3d Cir. 2006).  A plaintiff establishes a viable false arrest claim by showing that (1) he or she was detained, and (2) such detention was unlawful.  <u>Marable v. W. Pottsgrove Twp.</u>, 176 Fed.Appx. 275, 280 (3d Cir. 2006).  Further, to establish a claim for malicious prosecution, a plaintiff must prove that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the

concept of seizure as a consequence of a legal proceeding." Id. at 280-81.

Kelsey and Long are entitled to qualified immunity regardless of whether their conduct violated Plaintiffs' constitutional rights if "a reasonable officer could have believed that [their] conduct was lawful, in light of the clearly established law and information in [their] possession." Berg, 219 F.3d at 272; see Siegel v. Miller, 446 F.Supp.2d 346, 352 (E.D. Pa. 2006) (stating same in the context of a false arrest claim). The doctrine of qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau, 543 U.S. at 198. Accordingly, if the law at the time the officer engaged in the conduct at issue did not clearly establish that the officer committed a constitutional violation, the officer is not liable. Id. "[T]he right the official is alleged to have violated must be 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 198-99. Therefore, in determining whether an officer is protected by the doctrine of qualified immunity, the Court must ascertain whether it would have been clear to a reasonable officer confronted with

14

the same situation that the officer's conduct was unlawful.  Id.
at 199; see Siegel, 446 F.Supp.2d at 352.  Whether the doctrine
of qualified immunity applies in a particular case is a question
of law for the Court.  Elder v. Holloway, 510 U.S. 510, 516
(1994); Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir.
2006).  However, when qualified immunity depends on disputed
factual issues, those issues must be decided at trial.  Monteiro,
436 F.3d at 405.

     Kelsey and Long have shown that a reasonable officer could
have believed that their decision to arrest and charge Plaintiffs
was lawful under the circumstances.  According to Sportella,
Reyes was "flipping out" and yelling derogatory statements.
(Kelsey & Long Br., at 4; Pl. Br., at 4.)  Kelsey believed this
derogatory statement was directed at him.  (Kelsey & Long Br., at
5; Pl. Br., at 4.)  Morever, Kelsey instructed Reyes to "shut
up", but she continued yelling racial invectives.  (Trenton Br.,
at 5; see Pl. Br., at 4.)  Reyes admitted that "all the
neighbors" were watching the incident.  (Kelsey & Long Br., at 5;
Pl. Br., at 13 (noting that there was a "gathering of curiosity
seekers" and "any time the police are called to a residence; the
neighbors look out their windows and gather around to see what is
happening").)  When Sportella realized Reyes was being arrested
he made antagonizing statements.  (Id. at 6; Pl. Br., at 5.)
Accordingly, this Court need not determine whether the arrests

                              15

were supported by probable cause.  Kelsey and Long have
demonstrated, and Plaintiffs have failed to rebut, that a
reasonable officer confronted with the same circumstances that
Kelsey and Long faced here could have concluded that arresting
Plaintiffs and charging Reyes with improper behavior, and
Sportella with both improper behavior and drinking in public, was
lawful and did not violate their constitutional rights.  See
Brosseau, 543 U.S. at 199; see also New Jersey v. Miller, 47 N.J.
273, 279 (1966) ("Courts should always remember that arresting
officers have to act on the spur of the moment and that they are
not constitutional lawyers.").  Therefore, Kelsey and Long are
protected from Plaintiffs' false arrest and malicious prosecution
claims by the doctrine of qualified immunity.

Kelsey and Long are also entitled to summary judgment on
Plaintiffs' malicious prosecution claim because Plaintiffs have
not alleged that they suffered a deprivation of liberty
consistent with the concept of seizure as a consequence of a
legal proceeding.  Plaintiffs asserted that the charges against
them were subsequently dismissed for lack of prosecution.  (Pl.
Br., at 8.)  Kelsey, Long, and the City of Trenton do not dispute
this assertion.  Thus, Plaintiffs have not established that they
were "seized" or deprived of any liberty right as a result of the
charges.  See Shelley v. Wilson, 152 Fed.Appx. 126, 129 (3d Cir.
2005) (finding that attendance at a two-day trial was not a

seizure under the Fourth Amendment, and thus, plaintiff had not alleged a deprivation of liberty sufficient to prove his malicious prosecution claim); Holmes, 184 Fed.Appx. at 151 (concluding that having to appear in court to defend against a speeding ticket is not a sufficient liberty deprivation to sustain a malicious prosecution claim).  Thus, Plaintiffs have not rebutted Kelsey and Long's showing that they are entitled to summary judgment on Plaintiffs' malicious prosecution claim because Plaintiffs have not sufficiently alleged that Kelsey and Long used a legal proceeding to deprive them of a liberty interest.

### 3.   Deliberate Indifference to Serious Medical Needs

Plaintiffs assert, in count two of the complaint, that Kelsey's conduct constituted deliberate indifference to Reyes's obvious and serious medical needs.  (Compl., at ¶ 34.) Specifically, Plaintiffs contend that Kelsey (1) did not call for medical help when he observed Reyes having a panic attack, (2) denied Reyes's request for an ambulance, and instead released her to her husband, (3) twisted Reyes's arm even though he knew she had reconstructive surgery on her hand, and (4) administered medication to Reyes upon her request without knowing the type of drug administered.  (Pl. Br., at 26-27.)  Kelsey and Long have demonstrated that their treatment of Reyes's medical needs was not so egregious that it offended "evolving standards of

17

decency", and Plaintiffs failed to rebut this showing.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

"[D]eliberate indifference to serious medical needs of prisoners [or detainees]" violates the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, because it constitutes "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993).  Accordingly, to succeed on an Eighth Amendment medical-care claim, a plaintiff must establish that (1) he or she has a serious medical need, and (2) prison officials were deliberately indifferent to such medical need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A medical need is "serious" if a physician would diagnose it as requiring treatment or a lay person would easily recognize it as needing medical attention.  Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  Further, if denial or delay causes "unnecessary and wanton infliction of pain", a life-long handicap, or permanent loss, the medical need is considered serious.  Id.

"Where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate [or detainee] 'to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest.'" Lanzaro, 834 F.2d at 343 (internal citations omitted).  However, claims of

18

negligence or malpractice are not sufficient to establish
"deliberate indifference".  Rouse, 182 F.3d at 197; see White v.
Napoleon, 897 F.2d 103, 106 (3d Cir. 1990) ("Mere medical
malpractice cannot give rise to a violation of the Eighth
Amendment.").  Thus, in order to state a cognizable claim for
failure to provide medical care in violation of the Eighth
Amendment, a prisoner must allege acts or omissions that are
sufficiently harmful to offend "evolving standards of decency".
Estelle, 429 U.S. at 106.

Plaintiffs allege that Reyes suffered panic attacks when she
was arrested.  Panic attacks are easily recognized by a lay
person as necessitating medical attention, and thus, constitute a
serious medical need.  See Lanzaro, 834 F.2d at 347.  However,
Plaintiffs do not identify any specific medical need related to
Reyes's hand or arm.  Instead, they generally allege that (1)
Reyes previously had reconstructive surgery on her hand without
stating when such surgery occurred, and (2) Kelsey and Long's
conduct caused Reyes to injure her neck, shoulder and left upper
extremities.  (Pl. Br., at 27; Compl., at ¶ 37.)  Such general
allegations are not sufficient to establish that Reyes had any
preexisting medical condition relating to her hand or arm that
needed attention at the time of her arrest.

Plaintiffs also have not sufficiently shown that Kelsey
exposed Reyes "to undue suffering or the threat of tangible

residual injury". See Lanzaro, 834 F.2d at 343.  In response to
Reyes's request for medication and medical attention, Kelsey
removed her handcuffs and attempted to find her medication inside
her bag.  (Pl. Br., at 26; Kelsey & Long Br., at 19.)  Kelsey
placed the appropriate medication on Reyes's tongue after another
party located it inside her bag.  (Pl. Br., at 26; Kelsey & Long
Br., at 19.)  According to Sportella, he and Reyes were only at
the police station for ten or fifteen minutes before Reyes was
permitted to take her medication.  (Primas Cert., Ex. B, 10-5-06
Sportella Dep., at 102; Kelsey & Long Br., at 9.)  Reyes was
later released to her husband, and thus, was able to seek
additional medical attention if necessary.  Accordingly,
Kelsey and Long have established that Kelsey's conduct did not
cause Reyes "unnecessary and wanton infliction of pain contrary
to contemporary standards of decency".  Helling v. McKinney, 509
U.S. at 32.  Plaintiffs have not rebutted Kelsey and Long's prima
facie showing.  At best, Plaintiffs have demonstrated that Kelsey
acted negligently, but negligence does not give rise to a
"deliberate indifference" claim.  See Rouse, 182 F.3d at 197.
Therefore, this Court holds that entering summary judgment in
favor of Kelsey and Long on Plaintiffs' deliberate indifference
claim is appropriate.

### 4.   Equal Protection

Plaintiffs allege in count ten of the complaint that (1) they are Hispanic, (2) Defendants intentionally ignored regulations and procedures governing their conduct, and (3) Defendants' conduct "was knowingly undertaken with the intent to deny Plaintiffs their right to full and equal benefits of the laws and proceeding for the security of persons and property as is enjoyed by white citizens in violation of the Civil Rights Act of 1866 (42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991), because of Plaintiffs' race and national origin." (Compl., at ¶¶ 126-28.)  Plaintiffs contend that summary judgment on their equal protection claim would be premature because the City of Trenton's Police Department has not provided its arrest and personnel records, which may show a pattern or practice of targeting Hispanic persons.  (Pl. Br., at 27.)

To state a claim for violation of the Fourteenth Amendment's equal protection clause, a plaintiff must demonstrate "that an official's actions were (1) discriminatory in effect and (2) motivated by discriminatory purposes."  <u>Martino</u>, 2005 U.S. Dist. LEXIS 15622, at *41.  To show discriminatory effect, a plaintiff must prove that he or she is a member of a protected class and was treated differently than similarly situated individuals, who are members of an unprotected class.  <u>Id.</u>; <u>see</u> <u>Pollack v. City of Phila.</u>, No. 06-4089, 2007 U.S. Dist. LEXIS, at *11 (E.D. Pa. Feb. 16, 2007).

21

Plaintiffs here are Hispanic, and thus, are members of a protected class.  However, Reyes admitted during her deposition that she does not believe that Kelsey and Long's conduct was motivated by a discriminatory purpose or had a discriminatory effect.  Specifically, when asked to describe the facts forming the basis of her discrimination claim, Reyes responded, "[a]t no time in this case am I talking about discrimination.  I'm talking about the St. Francis case and the other cases where – in other cases that I have had with the police. . . ."  (Dkt. entry no. 20, Primas Cert., Ex. E, 9-1-06 Reyes Dep., at 121.)  Further, when expressly asked whether she was claiming that she was discriminated against on the basis of her race in this action, Reyes stated, "[a]t no time have I.  It was just because he says that I called him a n****r and it was the other person."  (Id.) Plaintiffs have not offered any evidence refuting the accuracy of these statements.  Therefore, additional discovery on the Trenton Police Department's personnel and arrest records will not give rise to sufficient evidence to rebut Kelsey, Long, and the City of Trenton's prima facie showing that they are entitled to summary judgment on Plaintiffs' equal protection claim. Accordingly, the Court will grant the separate motions with respect to that claim.

### 5.   Municipal Liability

Local government units may be sued directly under § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); see Natale v. Camden County Corr. Fac., 318 F.3d 575, 583-84 (3d Cir. 2003).  However, as noted above, civil rights liability cannot be predicated solely on the doctrine of respondeat superior.  Rode, 845 F.2d at 1207.  Personal involvement in the alleged wrong-doing must be shown "through allegations of personal direction or of actual knowledge and acquiescence." Id. Accord Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must [first] show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  A policy is made when a decision maker with authority to establish municipal policy issues a final proclamation, policy, or edict.  Kneipp, 95 F.3d at 1212.  Moreover, a custom is a course of conduct by state officials that, although not officially authorized, is so permanent and well settled that it essentially constitutes law.

23

Id.  There are three situations where the Court should hold a
governmental entity, which established a policy or acquiesced in
a custom, liable for the acts of an individual government
official:

> The first is where the appropriate officer or entity
> promulgates a generally applicable statement of policy
> and the subsequent act complained of is simply an
> implementation of that policy.  The second occurs where
> no rule has been announced as policy but federal law
> has been violated by an act of the policymaker itself.
> Finally, a policy or custom may also exist where the
> policymaker has failed to act affirmatively at all,
> [though] the need to take some action to control the
> agents of the government is so obvious, and the
> inadequacy of existing practice so likely to result in
> the violation of constitutional rights, that the
> policymaker can reasonably be said to have been
> deliberately indifferent to the need.

Natale, 318 F.3d at 584 (internal quotations and citations
omitted).  Nevertheless, a plaintiff alleging municipal liability
under Section 1983 must show more than the existence of an
unlawful policy or custom.  Id. at 1213.  The plaintiff also must
establish that the government policy or custom was the proximate
cause of the injuries sustained.  Id.

The City of Trenton has demonstrated that it is entitled to
summary judgment on Plaintiffs' municipal liability claim.
Specifically, Kelsey and Long have demonstrated that their
conduct did not violate Plaintiffs' constitutional rights, and,
as discussed in more detail above, Plaintiffs have failed to
rebut this showing.  Thus, there is no basis for imposing
municipal liability here.  Bornstad, 2007 U.S. App. Lexis 218, at

*24-*25 (concluding that because the court found that there was
no violation of plaintiff's constitutional rights, there was no
basis for imposing municipal liability).

**B.   Plaintiffs' Sections 1981, 1985 and 1986 Claims**

Sections 1981, 1985, and 1986 have no relevance to the
factual allegations set forth in the complaint.  First,
Plaintiffs do not allege that either Kelsey, Long, or the City of
Trenton impaired Plaintiffs' right to enter into any contract.
See Domino's Pizza, Inc. v. McDonald, 126 S.Ct. 1246, 1249 (2006)
(explaining that a claim brought under Section 1981, which
protects the equal right of all persons to make and enforce
contracts without respect to race, "must initially identify an
impaired 'contractual relationship,' . . . under which the
plaintiff has rights").  Further, Plaintiffs have not alleged
that either Kelsey, Long, or the City of Trenton conspired to
either prevent an officer of the United States from performing
his or her duties, or intimidate a party, witness, or juror
involved in a legal proceeding.  See 42 U.S.C. § 1985(1)-(2).
Similarly, because Reyes admitted at her deposition that she does
not allege racial discrimination here, Plaintiffs cannot
establish that either Kelsey, Long, or the City of Trenton
conspired to deprive them of the equal protection of the laws due
to racial animus in violation of Section 1985(3).  (Trenton Br.,
at 27, Kelsey & Long Br., at 10.)  See Griffin v. Breckinridge,

25

403 U.S. 88, 102 (1971) (stating that Section 1985(3) requires the plaintiff to show that the defendant had some kind of invidiously discriminatory motivation); <u>Friends & Residents of St. Thomas Twp., Inc. v. St. Thomas Dev., Inc.</u>, 176 Fed.Appx. 219, 228 (3d Cir. 2006) (noting that to state a claim under Section 1985(3), the plaintiff must allege (1) a conspiracy between two or more persons, (2) motivated by a racial animus and designed to deprive a person of the equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege).

Plaintiffs' claims under Section 1986 also must fail because they have not shown that they have a viable claim under Section 1985(3).  <u>See</u> <u>Burlingame v. Pretium Packagings</u>, No. 05-2469, 2006 U.S. Dist. LEXIS 54975, at *18 (M.D. Pa. Aug. 8, 2006) (noting that Section 1986 applies to defendants that were not involved in alleged conspiracy but negligently failed to stop it, and thus, such a claim must accompany a Section 1985(3) claim).  Therefore, this Court finds that Kelsey, Long, and the City of Trenton are entitled to summary judgment on Plaintiffs claims under Sections 1981, 1985, and 1986.

### C.  Plaintiffs' Request for Injunctive Relief

Plaintiffs assert that Kelsey and Long's unlawful conduct is likely to reoccur because the Trenton Police Department does not properly train, supervise, control, or discipline its officers.

26

(See Compl., at ¶¶ 97-98.)  Accordingly, Plaintiffs contend that their remedies at law are insufficient, and thus, equitable relief in the form of an injunction is necessary to "prevent the continuing violations of the constitutional rights of Plaintiff [sic] and the other citizens of this State".  (Id. at ¶ 98.) However, Plaintiffs have not satisfied the requirements for a permanent injunction because they have not demonstrated that they will ultimately succeed on their underlying claims.  Ruiz v. New Garden Twp., 376 F.3d 203, 206 (3d Cir. 2004); In re Diet Drugs, 369 F.3d 293, 307 (3d Cir. 2004) ("Of primary importance, a party seeking an injunction must show that there is some legal transgression that an injunction would remedy.").  Therefore, the Court finds that the City of Trenton is entitled to summary judgment with respect to Plaintiffs' injunction claim.

### D.  Plaintiffs' State Law Claims

Plaintiffs assert state-law false arrest, malicious prosecution, negligence, negligent infliction of emotional distress, and equal protection claims in the complaint.  (See Compl., at ¶¶ 42-72, 99-134, .)  The Court will not exercise supplemental jurisdiction over these state law claims in view of the impending dismissal of the federal claims.  See 28 U.S.C. § 1367(c)(3) (authorizing same).  Thus, the Court will (1) deny without prejudice the parts of the separate motions by Kelsey and Long, and the City of Trenton, seeking summary judgment on the

state law claims asserted against them, and (2) remand the state law claims asserted against them.

## CONCLUSION

The Court, for the reasons stated supra, will (1) grant the separate motions by Kelsey and Long, and the City of Trenton, for summary judgment with respect to Plaintiffs' unreasonable and excessive force (count one), deliberate indifference to serious medical needs (count two), Fourth Amendment false arrest and malicious prosecution (counts three, four, and five), municipal and supervisor liability (count six), federal equal protection (count ten), and injunctive relief (count seven) claims; and (2) deny the separate motions by Kelsey and Long, and the City of Trenton, for summary judgment without prejudice with respect to Plaintiffs' state law false arrest (counts three and four), malicious prosecution (count five), equal protection (count ten), negligence (count eight), and negligent infliction of emotional distress (count nine) claims.  The Court will issue an appropriate order and judgment.


        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge